***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Robert W. Rideout, Jr. and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence. Accordingly, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner with minor modifications and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At the time of injury, the Phoenix Insurance Company was the carrier on the risk for employer-defendant.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
4. The date of loss shall be considered for the purposes of this proceeding to be September 6, 2006.
5. At the time of the loss, the average weekly wage of the plaintiff was $555.66.
6. Plaintiff started losing time from work after September 25, 2006, and he has not returned to work for the employer-defendant.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 EXHIBITS
1. The parties stipulated a group of medical records and documents into the record.
2. The transcript of the deposition of Dr. Robert Sypher.
 *********** ISSUES 1. Did plaintiff sustain an injury by accident in the course and scope of his employment with the defendant-employer on September 6, 2006?
 2. Did plaintiff fraudulently obtain employment with defendant-employer so that no employee-employer relationship formed between plaintiff and defendant-employer?
 *********** *Page 3 
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was fifty-seven years old at the time of the hearing before the Deputy Commissioner, married and has two children and a stepson. He has completed two years of college.
2. Prior to September 6, 2006, the plaintiff was employed by High Point Enterprise as a district manager, and had been so employed since January, 2006. Further, plaintiff had worked for said employer as a route carrier since November, 1999, until becoming a district manager in January, 2006.
3. The primary responsibilities of the plaintiff were to see that newspapers were delivered in a timely fashion, and interview and hire prospective carriers for routes.
4. When plaintiff filled out his job application, he stated that he was physically capable of performing the essential functions of his occupation. He disclosed that he had prior injuries. The essential physical duties of being a district manager were the same as he had been fulfilling for approximately five years as a route carrier.
5. On September 6, 2006, plaintiff reported to work at approximately 1:00 o'clock a.m. The newspapers he was going to deliver were loaded on to his truck by someone else. He did not observe that some of the newspapers were packed in fifty-count bundles.
6. The newspapers are typically bundled in groups of twenty-five or fifty, and they are strapped by a band. They are actually placed upside down in the vehicle of the district manager in order to enable the same to pop the band, roll the paper, place it in a plastic bag and deliver it with the front page of the newspaper facing outward through the plastic bag. A key *Page 4 
sheet is attached to each bundle telling the number of papers to be delivered, the count or size of the bundles and the individuals to whom the papers are to be delivered. The key sheet is placed on top of the bundle before it is banded. The key sheet was facing downward in plaintiff's vehicle because the bundles were turned upside down. Therefore, plaintiff did not realize that the stacks of newspapers in his truck on September 6, 2006 were bundled in a fifty count, and much heavier than normal. Wednesday's papers were typically bundled in stacks of twenty-five newspapers, not fifty-count. In addition, as September 6, 2006 was a Wednesday, the Wednesday editions of the High Point Enterprise contain inserts and are heavier than other editions during the week when inserts are not included.
7. During the early morning hours of September 6, 2006, plaintiff stopped his vehicle on Leonard Drive in High Point at Mt. Vernon Baptist Church to retrieve bundles from the bed of his truck to put in the front seat of the same to make deliveries. Plaintiff, not appreciating the unusual bundling by fifty-count, reached in the bed of his truck with his right arm. As Plaintiff was pulling up a bundle out of the bed of his truck, he felt a sharp burning pain in his right shoulder which caused him to drop the bundle back into the bed of his truck.
8. Upon completing his duties on September 6, 2006, plaintiff returned to the defendant's premises and waited for the circulation manager to come in so that he could report his injury. However, plaintiff had to make a delivery on another route and could not meet with the circulation manager. Plaintiff discussed his injury with Rick Brummet who was a dock manager with the defendant and with Tom Gallimore, another district manager for the defendant.
9. The testimony of a former employee compels a finding that on Wednesday September 6, 2006 the newspapers were bundled in a fifty-count because an employee who worked in circulation who bundled the newspapers had been out on the prior Monday, and when *Page 5 
he worked that Wednesday, he actually thought he was working on Tuesday and did not realize that he was bundling the Wednesday newspapers in fifty-count bundles.
10. The undersigned find as a fact that the typical practice of defendants was to bundle the Wednesday newspapers in twenty-five-count bundles not fifty bundle counts as plaintiff encountered. It was not the typical practice to bundle Wednesday newspapers, which are heavier than other editions because of inserts, in a fifty-count bundle. This finding is supported by the testimony of two former employees of the defendant who were working on September 6, 2006, that the fifty-count bundles prepared on that date were unusually heavy. Each of the bundles weighed over fifty pounds and possibly as high as sixty pounds. The job description for the plaintiff on that date required lifting of not over forty pounds. Therefore, plaintiff's encounter with the weight of the newspapers on September 6, 2006 was both unexpected and unusual.
10. Plaintiff was finally able to file a report of injury on September 25, 2006, following a visit to Dr. Robert Sypher, an orthopedic surgeon in Greensboro, North Carolina. Dr. Sypher was of the opinion that as a result of his work-related injury on September 6, 2006, plaintiff had sustained a rotator cuff tear in his right shoulder which was an aggravation of pre-existing degenerative conditions.
11. Dr. Sypher ordered an MRI done of the shoulder on October 20, 2006, which showed a partial thickness tear of the rotator cuff. Dr. Sypher performed surgery on the plaintiff to repair the rotator cuff on November 9, 2006.
12. Dr. Sypher kept the plaintiff out of work from September 25, 2006 until April 21, 2007 for the work-related injury. *Page 6 
13. Dr. Sypher was of the opinion that on or about June 4, 2007, the plaintiff had reached maximum medical improvement from his injury, was capable of returning to work without restrictions but had sustained a twenty percent permanent partial impairment of his right arm.
14. The plaintiff did not knowingly and willfully make a false representation as to his physical condition when he stated on his employment application for district manager that he could perform the essential physical duties of that job in that he had been fulfilling the same essential physical duties in the position of route carrier for the defendant-employer for approximately five years before completing the application for district manager. Further, defendants have proven no causal connection between any impairment plaintiff may have had prior to his employment relationship with the defendant-employer and the injury of September 6, 2006.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. An employee-employer relationship existed between the plaintiff and the defendant-employer on September 6, 2006.
2. Except for back injuries and hernias, an injury needs to be an "accident," in order to be compensable under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
2. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way. It involves interruption of the work routine and the introduction of an unusual event. Harding v. Thomasand Howard Company, 256 N.C. 427 (1963). *Page 7 
3. Plaintiff sustained an injury by accident arising out of and in the course of employment with defendant on September 6, 2006. The injury involved the interruption of the work routine and constituted an unusual event. N.C. Gen. Stat. § 97-2(6).
4. The plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident. N.C. Gen. Stat. §§ 97-2(19) 97-25.
5. The plaintiff is entitled to temporary total disability benefits from September 25, 2006 until April 21, 2007. N.C. Gen. Stat. § 97-29.
6. The plaintiff is entitled to permanent partial disability benefits for forty-eight weeks as a result of his twenty percent permanent partial impairment to his right arm from his work-related injury. N.C. Gen. Stat. § 97-31.
7. The North Carolina Supreme Court's decision in Freeman v. Rothrock, ___ N.C. ___, 676 S.E.2d 46 (2009) specifically reversed the holding of the Court of Appeals and relied on by the defendants in the present action that misrepresentations in an application for employment renders the employment contract void ab initio. Therefore, defendants' argument in their Brief is now moot.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. The defendant shall compensate the plaintiff for temporary total disability the sum of $370.44 per week from September 25, 2006 until April 21, 2007. This compensation shall be paid in lump sum, subject to attorney's fee approved in Paragraph 3, below. *Page 8 
2. The defendant shall compensate plaintiff for permanent partial disability for forty-eight weeks for his twenty percent partial impairment to his right arm at the rate of $370.44 per week. This compensation shall be paid in lump sum, subject to attorney's fee approved in Paragraph 3, below.
3. Plaintiff's counsel shall be entitled to twenty-five percent of the past temporary total disability and permanent partial disability benefits. Defendants shall deduct the amount of attorney fee owed from sums due the plaintiff and pay the same in lump sum to plaintiff's counsel.
4. Defendants shall pay for all medical treatment of the plaintiff as has been rendered in the past and may be rendered in the future, that is reasonably necessary to effect a cure or give relief, specifically including, but not limited to, the treatment of Dr. Robert Sypher, diagnostic testing ordered by Dr. Sypher, the surgical expenses for the surgery performed by Dr. Sypher and any physical therapy conducted at Dr. Sypher's office, together with reimbursement of any out of pocket expenses incurred by plaintiff related to treatment for his compensable injuries.
5. The defendants shall bear the cost of this proceeding;
This the ___ day of June, 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING: *Page 9 
S/_____________ BERNADINE S. BALANCE COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1